**GAYHEART, et al., Appellees,**

v.

**DAYTON POWER & LIGHT COMPANY, Appellant.**

[Cite as *Gayheart v. Dayton Power & Light Co.* (1994), 98 Ohio App.3d 220.]

Court of Appeals of Ohio,
Greene County.

No. 93–CA–60.

Decided Oct. 28, 1994.

---

**11.** Adams stated that Hale took his credit cards, without consent, while they were on a business trip.

*Richard Hempfling,* for appellees.

*Neil F. Freund,* for appellant.

BROGAN, Judge.

Dayton Power and Light ("DP & L") appeals from the final judgment of the Greene County Common Pleas Court entered upon the jury verdict finding DP & L guilty of negligence.

DP & L advances five assignments of error on appeal. Among other claims, DP & L contends that the trial court lacked subject matter jurisdiction over the cause of action and erred in instructing the jury on the doctrine of *res ipsa loquitur*.

On February 9, 1989, a fire occurred on the property of Chester and Phyllis Gayheart. The fire destroyed the Gayhearts' barn, equipment and livestock, including sixteen thoroughbred horses.

On July 28, 1989, the Gayhearts filed a complaint alleging that DP & L had been negligent in designing and maintaining its electrical equipment. The Gayhearts allege that, because of DP & L's negligence, a surge of electricity on the neutral electricity line entered their property and caused a fire. DP & L filed an answer on August 28, 1989. The Gayhearts filed an amended complaint on March 15, 1990.

Following an extensive discovery period, during which depositions of the parties and several experts were taken, DP & L filed a motion for summary judgment, which was overruled by the trial court.

Chester Gayheart died before the trial began. Mr. Gayheart's death was unrelated to the events of the lawsuit. Phyllis Gayheart, as executor of Chester's estate, was substituted as a party in his place.

Prior to trial, the trial court bifurcated the issues of liability and damages. On May 11, 1992 through May 14, 1992 the case was tried before a jury on the issue of liability only.

At trial, plaintiffs presented testimony from several witnesses to establish their theory that the fire was caused by a power surge created by DP & L's negligence. First, portions of Chester Gayheart's deposition were read into evidence, and Phyllis Gayheart testified concerning the events of the fire. Paul Dillard, an electrician, testified that the Gayhearts' wiring and electrical system were "up to Code."

Plaintiffs then called several expert witnesses. Among the experts was John Terpak, a metallurgist, who testified that a glob of metal found at the scene of the fire was a piece of aluminum wire which melted as a result of an electrical surge on the neutral line. Fire Chief Clifton Beegle testified that the fire was started by some type of an electrical short.

Dr. Morris Mericle, an electrical engineering expert, testified that a power surge had occurred and that there were five possible causes of such a surge. Dr. Mericle testified that because there was no evidence of two of the possible causes—lightning and accidents—the power surge had been caused by one of the other three possibilities. He testified that the remaining three possibilities were all under the exclusive control of DP & L and would not normally occur in the

absence of DP & L's negligence. Dr. Mericle admitted that it was impossible to tell which of the remaining three causes of a power surge had actually occurred.

At the close of plaintiffs' evidence, the defendant moved for a directed verdict on the ground that the trial court did not have subject matter jurisdiction over the cause of action. The trial court overruled the motion.

The defense then presented opposing evidence, including the following: Larry Hatchett, a Greene County Task Force fire investigator, testified that the cause of the fire was a malfunction of the electrical panels in the Gayhearts' barn; William Brown, an investigator for the Ohio State Fire Marshall's Office, testified that the fire was caused by a short in the electrical panels; George Luken, an electrical engineering expert, testified that no power surge had occurred and that the fire had been caused by a failure to insulate the breaker panel in the barn; and Orin Queen, an expert in electrical engineering, testified that a power surge could not have caused the fire.

At the conclusion of the evidence, the trial court's instructions to the jury included an instruction on *res ipsa loquitur*. DP & L objected to the *res ipsa loquitur* instruction. The jury returned a verdict for the plaintiffs, finding DP & L to be negligent.

DP & L moved for judgment notwithstanding the verdict, for a new trial, and for a dismissal. All motions were overruled by the trial court.

The parties subsequently agreed to an amount of damages. Final judgment was entered in favor of the plaintiffs on August 11, 1993. DP & L then asserted this timely appeal.

█ Appellant's first assignment of error provides:

"The trial court lacked subject matter jurisdiction over the instant case."

In support of this assignment of error, DP & L contends that pursuant to R.C. 4905.26, the Public Utilities Commission of Ohio ("PUCO") has exclusive jurisdiction over this case.

R.C. 4905.26 provides in part:

"Upon complaint in writing against any public utility by any person * * * that any rate, fare, charge, toll, rental, schedule, classification, or service, * * * or service rendered * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, * * * if it appears that reasonable grounds for complaint are stated, the commission shall

fix a time for hearing and shall notify complainants and the public utility thereof * * *."

The Ohio Supreme Court has held that PUCO has jurisdiction to adjudicate utility customer complaints related to rates or services of the utility. *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 573 N.E.2d 655. The purpose of providing PUCO with such jurisdiction is that the resolution of such claims "is best accomplished by the commission with its expert staff technicians familiar with the utility commission provisions." *Id.* at 153, 573 N.E.2d at 660. Where PUCO does have jurisdiction as provided by the statute, that jurisdiction is exclusive and reviewable only by the Supreme Court. *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 52 O.O.2d 29, 260 N.E.2d 827.

However, PUCO does not have exclusive jurisdiction over every claim brought against a public utility. Contract and pure common-law tort claims against a public utility may be brought in a common pleas court. *State ex rel. Ohio Power Co. v. Harnishfeger* (1980), 64 Ohio St.2d 9, 18 O.O.3d 130, 412 N.E.2d 395; *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575; *Steffen v. Gen. Tel. Co.* (1978), 60 Ohio App.2d 144, 14 O.O.3d 111, 395 N.E.2d 1346. As stated by the Ohio Supreme Court, "the Commission has no power to judicially ascertain and determine legal rights and liabilities * * *." *Milligan, supra,* 56 Ohio St.2d at 195, 10 O.O.3d at 354, 383 N.E.2d at 578.

To dispose of DP & L's first assignment of error, we must determine if the Gayhearts' claim is related to service as contemplated by R.C. 4905.26 or is a pure common-law tort claim. In essence, the Gayhearts' cause of action against DP & L alleges that DP & L was negligent in allowing a power surge to enter the Gayheart's property.

In support of its argument that the trial court lacks subject matter jurisdiction, DP & L cites *Kazmaier*, wherein the Supreme Court held that PUCO had exclusive jurisdiction over a claim that a utility had negligently overcharged a customer. The court concluded that because the basis of the action was the charging of unreasonable rates, PUCO had exclusive jurisdiction. As the present case does not involve a dispute concerning rates, we find that *Kazmaier* is distinguishable.

DP & L also cites *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807, wherein we held that PUCO had exclusive jurisdiction over the plaintiff's claim even though it sounded in tort. However, *Farra* can also be distinguished from the present case. In *Farra*, the tort claim was based on a DP & L serviceman's trespass and destruction of property that occurred while he was removing a

customer's meters. We held that the method of removal of meters authorized by DP & L was a "practice" directly related to service and therefore PUCO had exclusive jurisdiction over the claim. The present case does not concern a "practice" of DP & L.

We recently revisited the issue of jurisdiction in *Mid–American Fire & Cas. Co. v. Gray* (June 15, 1993), Montgomery App. No. 13763, unreported, 1993 WL 211651. In *Mid–American,* we held that the trial court had jurisdiction over a tort claim against a utility where a serviceman failed to respond timely to a service call. We found that this was an isolated act of negligence, not a "practice" as in *Farra,* and, therefore, the trial court had proper jurisdiction.

In essence, every negligence claim brought against a public utility will be one involving some aspect of "service." However, we find the present case to be one not reasonably contemplated by the legislature in enacting R.C. 4905.26. In the present case, there is no evidence to suggest that DP & L authorized a power surge or that such a power surge was a "practice" engaged in regularly by DP & L. Instead, the power surge alleged is an isolated act of negligence. In fact, the crucial question presented in this case involved deciding which of two possible causes of the fire occurred—the power surge or faulty wiring—not deciding whether any "service" rendered by DP & L was unreasonable. The expertise of PUCO in interpreting regulations is not necessary to the resolution of this case. Rather, this is a case that is particularly appropriate for resolution by a jury. Thus, the trial court properly exercised jurisdiction over the claim. Appellant's first assignment of error is overruled.

As its second assignment of error, DP & L raises the following:

"The trial court's instruction of *res ipsa loquitur* to the jury constituted an abuse of discretion and was prejudicial as a matter of law."

In support of this assignment of error, DP & L contends that the prerequisites for the application of *res ipsa loquitur* were not established and that several possible causes of the fire exist. Conversely, the Gayhearts contend that the prerequisites for a jury instruction on *res ipsa loquitur* were properly established by the evidence adduced at trial, and, therefore, the trial court had a duty to instruct the jury on *res ipsa loquitur.*

The general rule is that there is no inference or presumption of negligence from a mere injury or accident. *Laughlin v. Cleveland* (1959), 168 Ohio St. 576, 7 O.O.2d 452, 156 N.E.2d 827. However, the doctrine of *res ipsa loquitur,* literally meaning "the thing speaks for itself," is an exception to this general rule. *Soltz v. Colony Recreation Ctr.* (1949), 151 Ohio St. 503, 39 O.O. 322, 87 N.E.2d 167. Because it is an exception, it must be applied "only where

the special reasons for its existence are present." *Id.* at 511, 39 O.O. at 325, 87 N.E.2d at 171.

The doctrine of *res ipsa loquitur* is an evidentiary, as opposed to substantive, rule of law, which allows the jury to infer negligence in cases where the prerequisites for its application are met. *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 18 OBR 253, 480 N.E.2d 464; *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 560 N.E.2d 165. The application of *res ipsa loquitur* does not change the plaintiff's claim, but merely allows the plaintiff to prove his case through circumstantial evidence. *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 17 O.O.3d 102, 406 N.E.2d 1385.

The Ohio Supreme Court has set forth the prerequisites for application of the *res ipsa loquitur* doctrine as follows:

"To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66–67, 52 O.O.2d 366, 366–367, 262 N.E.2d 703, 705.

It is well established that whether it is proper for the trial court to give the instruction of *res ipsa loquitur* is a determination that must be made on a case-by-case basis. See *Jennings Buick, supra.* Whether there is sufficient evidence to properly give the instruction "is a question of law to be determined initially by the trial court, subject to review upon appeal." *Hake, supra,* 23 Ohio St.2d at 67, 52 O.O.2d at 367, 262 N.E.2d at 705.

Although the prerequisites for applying the *res ipsa loquitur* doctrine appear to be straightforward, courts have recognized that the mere statement of the rule is usually much easier than its actual application. *Soltz, supra.* In determining whether the doctrine applies, the following question must be answered: "[D]o the facts show that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed by the defendant[?]" *Jennings Buick, supra,* 63 Ohio St.2d at 171, 17 O.O.3d at 105, 406 N.E.2d at 1388.

In the present case, the Gayhearts claim they have produced sufficient evidence to warrant the instruction to the jury on *res ipsa loquitur* and, thus, the instruction was proper. However, DP & L contends that the *res ipsa loquitur* instruction was improper because DP & L produced reliable evidence at trial that

it was not responsible for the cause of the fire. We must therefore examine the evidence to determine if the two prerequisites for *res ipsa loquitur* were established.

The Gayhearts produced expert testimony at trial to attempt to support the two prerequisites for *res ipsa loquitur* as set forth by the Ohio Supreme Court. First, the Gayhearts had to establish that the instrumentality causing the injury was under the exclusive control of the defendant. See *Hake, supra.* The Gayhearts' expert witness, Dr. Mericle, testified that the fire was caused by a power surge on the neutral electricity line coming onto the Gayhearts' property and thus the power surge was the "instrumentality" which caused the fire. Dr. Mericle further testified that, under the circumstances of this case, the high voltage on the neutral line was under the exclusive control of DP & L. To reach this conclusion, Dr. Mericle presumed that other possible causes of a power surge that would not be under the exclusive control of DP & L, such as lightning and car accidents, did not occur on the night of the fire because there was no evidence of their occurrence.

Second, the Gayhearts had to produce evidence that such an injury would not occur in the absence of negligence. See *Hake, supra.* Again, the Gayhearts presented the expert testimony of Dr. Mericle to satisfy this prerequisite. Dr. Mericle testified that, in the absence of lightning or car accidents, such a power surge would not occur in the absence of negligence. Further, the Gayhearts presented testimony that the wiring in their barn was "up to Code."

In opposition, DP & L presented expert testimony to establish that no power surge occurred on the neutral line and that, alternatively, if there had been a power surge, it would not have caused a fire. DP & L then produced expert testimony that the fire was caused by improper insulation in the breaker panels in the Gayhearts' barn.

DP & L contends that the Gayhearts did not establish the prerequisites. DP & L first claims that because there were several possible causes of the power surge, including two that could occur in the absence of DP & L's negligence, the Gayhearts failed to establish that the instrumentality was in the exclusive control of DP & L and that it would not occur in the absence of negligence. In furtherance of this claim, DP & L argues that the Gayhearts are unable to point to the exact cause of the power surge.

DP & L's argument is unpersuasive. There was evidence presented that the two nonnegligent possible causes of the power surge were not present on the night of the fire. In fact, DP & L's own witness, George Luken, testified that neither lightning nor an accident occurred on the night of the fire. The Gayhearts' expert witness plainly testified that a power surge caused by any of the three remaining possible causes was under the exclusive control of DP & L.

The fact that the Gayhearts cannot specify exactly which of the three remaining possible causes created the power surge does not strengthen DP & L's argument. Rather, it makes the case a particularly appropriate one for the application of the *res ipsa loquitur* doctrine. Had the Gayhearts been able to point to the exact cause of the power surge, there would be no need for the *res ipsa loquitur* doctrine in this case.

DP & L also contends that the instruction was improper because the Gayhearts did not eliminate the possibility that the fire was caused by their own faulty wiring. The Gayhearts did, however, present testimony that their electrical system was "up to Code." Additionally, the Ohio Supreme Court has recognized that:

"[A] plaintiff seeking to invoke the doctrine of *res ipsa loquitur* in a negligence action need not eliminate all reasonable non-negligent causes of his injury. It is sufficient if there is evidence from which reasonable men can believe that it is more probable than not that the injury was the proximate result of a negligent act or omission." *Jennings Buick, supra,* 63 Ohio St.2d at 172, 17 O.O.3d at 106, 406 N.E.2d at 1389, citing *Adam Hat Stores, Inc. v. Kansas City* (Mo.1958), 316 S.W.2d 594.

We find that the expert testimony produced by the Gayhearts was sufficient for the jury to find it more probable than not that the fire was a result of a power surge caused by DP & L's negligence.

Finally, DP & L argues that the instruction was improper because it produced evidence that no power surge occurred and that the fire was caused by the Gayhearts' faulty wiring and failure to insulate.

We recognize the general rule, as cited by the Gayhearts, that a rebuttal by the defense will not automatically make a *res ipsa loquitur* instruction improper if it is otherwise supported by the plaintiff's evidence: "It is a well-established principle that a court may not refuse as a matter of law to instruct on the doctrine of *res ipsa loquitur* merely upon the basis that the defendant's evidence sufficiently rebuts the making of such an inference." *Morgan, supra,* 18 Ohio St.3d at 189, 18 OBR at 256, 480 N.E.2d at 467; *Fink v. New York Cent. RR. Co.* (1944), 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456. To do so would improperly invade the province of the jury to weigh the evidence and decide which party's evidence was more persuasive. For example, in *Morgan,* the Ohio Supreme Court held that a *res ipsa* instruction was proper even though the defendant presented evidence that an air embolism, not the negligence of the hospital employees as the plaintiff claimed, caused the injury to the plaintiff.

However, we also recognize that:

"Where it has been shown by the evidence adduced that there are two equally efficient and probable causes of the injury, one of which is not attributable to the negligence of the defendant, the rule of *res ipsa loquitur* does not apply. In other words, where the trier of facts could not reasonably find one of the probable causes more likely than the other, the instruction on the inference of negligence may not be given." *Jennings Buick, supra,* 63 Ohio St.2d at 171, 17 O.O.3d at 105, 406 N.E.2d at 1388; see, also, *Glowacki v. N.W. Ohio Ry. & Power Co.* (1927), 116 Ohio St. 451, 157 N.E. 21; *Loomis v. Toledo Railways & Light Co.* (1923), 107 Ohio St. 161, 140 N.E. 639.

For example, in *Jennings Buick,* the plaintiff presented evidence through expert testimony that a water main break had probably been caused by the improper backfilling technique of the defendant city. However, on cross-examination, the plaintiff's expert admitted that it was equally as probable that the water main break was due to other causes not related to negligence. Further, the city presented evidence that the water main break was caused by corrosion. The court held that the instruction of *res ipsa loquitur* should not be given to the jury because "there was evidence presented to the trier of the facts which would have allowed the jury to find that one or another potential cause of the injury not attributable to the negligence of the city was equally as probable as was a cause attributable to the negligence of the city." *Jennings Buick, supra,* 63 Ohio St.2d at 174, 17 O.O.3d at 106–107, 406 N.E.2d at 1390. Thus, an instruction on *res ipsa loquitur* would have unfairly strengthened one side's case.

Upon close examination of the expert testimony presented by the parties in this case, we find that there was not evidence of "equally efficient" causes of the injury under the standard set forth in *Jennings Buick.* Unlike the evidence presented in *Jennings Buick,* the testimony of Gayhearts' expert did not state that other equally probable causes of the fire existed. In fact, Dr. Mericle plainly testified that the fire was caused by a power surge created as a result of DP & L's negligence.

Upon examining the record, we find that the state of the evidence presented was more similar to that in *Morgan* than in *Jennings Buick.* We recognize that DP & L presented opposing evidence that the fire was caused by failure to insulate the breaker panels, not by a power surge. However, the jury could reasonably find that one of the causes asserted by the parties was more probable than the other based on the strength of the evidence presented and the credibility of the witnesses.

Thus, as the Gayhearts have presented sufficient evidence to satisfy the prerequisites for instructing a jury on *res ipsa loquitur* and DP & L has merely presented evidence tending to rebut the inference of negligence created by the

Gayhearts' evidence, we find that the trial court did not err in instructing the jury on *res ipsa loquitur.* Appellant's second assignment of error is overruled.

As its third assignment of error, DP & L raises the following:

"The trial court improperly allowed the jury to speculate that DP & L's conduct was the proximate cause of the fire."

In support of this assignment of error, DP & L argues that the Gayhearts did not present sufficient evidence that the jury could reasonably conclude that DP & L's negligence proximately caused the fire and, therefore, the trial court should have granted DP & L's motion for directed verdict.

■ As a threshold issue, we must first determine whether DP & L properly preserved this alleged error for appeal. The Gayhearts first argue that the alleged error was not preserved for appeal because DP & L did not properly renew its motion for directed verdict at the close of all evidence.

■ It is well established that a motion for directed verdict made at the close of plaintiff's evidence which is denied by the trial court must be renewed at the close of all evidence to properly preserve the error for appeal. *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 556 N.E.2d 490; *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464.

In this case, DP & L moved for a directed verdict at the close of the Gayhearts' evidence, which the trial court subsequently overruled. Upon close examination of the record, DP & L did in fact renew its motion for directed verdict at the close of all evidence. During an on-the-record conference in chambers, held at the close of all evidence, counsel for DP & L specifically asked the court if it was still the court's position that a motion for directed verdict would be overruled. The court answered in the affirmative. Although this may not be the preferable method for renewing a motion for directed verdict, we find that it was sufficient to renew the motion.

■ However, the Gayhearts also argue that if the motion for directed verdict was properly preserved for appeal, it was preserved only as to the issue of jurisdiction and not as to the issue of proximate cause. Pursuant to Civ.R. 50(A)(3), "[a] motion for a directed verdict shall state the specific grounds therefor." The Gayhearts contend that DP & L did not specify lack of evidence as to proximate cause as a ground for its motion.

In its initial motion for directed verdict, made at the close of the Gayhearts' evidence, the only ground DP & L specified for its motion was lack of subject matter jurisdiction. The issue of proximate cause was clearly not asserted as a ground for the motion. When renewing the motion at the close of all evidence in

the judge's chambers, DP & L again failed to specifically mention proximate cause as a ground for the motion:

"Mr. Greene: You have overruled our motion for a directed verdict but that was not on the record. Is it still your position that—

"The Court: That's correct."

It was DP & L's responsibility to clearly establish the basis for its motion on the record in order to enable the trial court to make an informed and relevant ruling on the motion. As DP & L failed to do this, the error was not preserved for appeal.

 Moreover, regardless of whether there was a proper preservation of error, we find that the Gayhearts did present sufficient evidence as to proximate cause to overcome a motion for a directed verdict. Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In ruling on the motion, the trial court shall not consider the weight of the evidence or the credibility of the witnesses. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Thus, if the nonmoving party presents substantial evidence to support its case upon which reasonable minds could reach different conclusions, the motion must be denied. *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320, 27 O.O.2d 241, 199 N.E.2d 562; *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367.

In this case, the evidence presented by the Gayhearts as to proximate cause would allow reasonable minds to reach different conclusions. The Gayhearts' expert witness, Dr. Mericle, plainly testified that the cause of the fire was a power surge created by DP & L's negligence. Evidence was presented that there was no indication that other nonnegligent causes of a power surge such as lightning or car accidents had occurred on the night of the fire. There was further testimony presented that the Gayhearts' electrical system was "up to Code."

We agree that DP & L did present opposing evidence that the cause of the fire was the Gayhearts' failure to properly insulate the panel box. However, this does not negate the evidence presented by the Gayhearts. It was appropriate for the jury to decide which party had presented more persuasive evidence. The evidence presented was sufficient that reasonable minds could reach different

conclusions as to the proximate cause. Thus, there was no error in overruling DP & L's motion.

Accordingly, DP & L's third assignment of error is overruled.

As its fourth assignment of error, DP & L raises the following:

"The trial court's comments about the res ipsa loquitur instructions were improper and unduly prejudiced the jury."

During closing arguments, the Gayhearts' counsel stated: "The judge is going to instruct you on one of the legal charges, something called res ipsa, which is a Two Dollar Fifty Cent word for the thing speaks for itself." Subsequently, when giving instructions to the jury, the trial court began its *res ipsa loquitur* instruction by stating: "Here is that Two Dollar Fifty Cent phrase referred to earlier."

DP & L contends that it was prejudiced by the trial court's "Two Dollar Fifty Cent phrase" comment during jury instructions. DP & L claims that the trial court's reference to the analogy made by the Gayhearts' counsel strengthened the application of *res ipsa loquitur* in the minds of the jury.

■ Again, we must initially address the issue of whether DP & L properly objected to this comment to preserve any alleged error for appeal. Pursuant to Civ.R. 51, to preserve error in the giving of a jury instruction for appeal, a party must object to the instruction before the jury retires, stating specifically the matter objected to and the grounds for the objection.

The record reveals that DP & L's counsel objected to the proposed jury instruction on *res ipsa loquitur* in the trial judge's chambers prior to the instruction's being given. However, the record reveals no objection to the court's "Two Dollar Fifty Cent" comment made during the actual instructions. In fact, subsequent to using the "Two Dollar Fifty Cent" phrase in its instructions to the jury, the trial court pointedly asked the parties if either had additions or corrections to make to the instructions. Counsel for DP & L specifically answered, "No, your Honor," and thereby failed to object to the court's phrasing of the jury instructions. Had DP & L properly objected, the alleged error could have been easily cured by the trial court.

■ Moreover, we find that the remark of the trial court was not prejudicial to DP & L. We recognize that a trial court must exercise utmost care when instructing the jury to avoid revealing the opinion of the court on a particular issue. *State v. Nutter* (1970), 22 Ohio St.2d 116, 51 O.O.2d 178, 258 N.E.2d 440. Certainly, there may be cases where it is error for the trial court to repeat a phrase used by a party in closing arguments in situations where it reveals the court's opinion on the evidence.

However, in this case we find that the remark by the trial court did not influence the jury nor reveal the opinion of the trial court on the application of the doctrine of *res ipsa loquitur.* It is obvious that the court was simply alluding to the complex sound of the words *"res ipsa loquitur"* when it referred to it as a "Two Dollar Fifty Cent phrase." From the limited extent of the remark, we cannot say that it influenced the jury to apply the doctrine when it otherwise would not have done so. Accordingly, DP & L's fourth assignment of error is overruled.

As its fifth assignment of error, DP & L raises the following:

"Prejudicial error existed when the trial court refused to allow DP & L to read the complete testimony recorded in Chester Gayheart's deposition."

At trial, the Gayhearts read into evidence portions of the deposition of Chester Gayheart taken before his death. DP & L was then provided the opportunity to read other portions of the deposition into evidence. The Gayhearts objected to a question being read into evidence by DP & L, and the trial court sustained the objection. DP & L contends that the trial court erred in sustaining the objection.

The deposition testimony that was excluded by the court was the following question:

"Q. Okay. Are you suggesting that DP & L has a responsibility to inspect your panel and wiring?

"A. No sir."

The Gayhearts objected to the question on the basis that Mr. Gayheart was not qualified to answer the question.

DP & L is correct in its assertion that when a party reads part of a deposition into evidence, the opposing party has the right to read the rest of it. Pursuant to Civ.R. 32(A)(4), if a party offers only a portion of deposition testimony into evidence, the adverse party has the right to introduce any other part of the deposition into evidence. However, this is not an unqualified right. "[O]bjection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Civ.R. 32(B). Therefore, parties may introduce into evidence only those parts of a deposition which are not otherwise objectionable.

The Gayhearts objected to the question on the basis that Mr. Gayheart was not qualified to answer the question. We must determine whether the court's sustaining of the objection to the question was proper.

Unless a matter is within the comprehension of a layperson, expert testimony is necessary. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828. Before testifying as an expert, a witness must first be qualified as an expert. *Tinkham v. Groveport–Madison Local School Dist.* (1991), 77 Ohio App.3d 242, 602 N.E.2d 256.

It is clear in this case that Mr. Gayheart was not qualified as an expert. Additionally, the subject matter of the question was not within Mr. Gayheart's comprehension. The question called for Mr. Gayheart to state whether DP & L had a duty to inspect his wiring. There is no information in Mr. Gayheart's background that he had specific knowledge as to DP & L's duties as a public utility. We find that the question was properly excluded by the trial court on the basis that it called for an opinion that Mr. Gayheart was not qualified to render.

Moreover, any error committed by the trial court in excluding this testimony was certainly not prejudicial to DP & L. At trial, ample evidence was produced by DP & L that the Gayhearts' were responsible for the electrical panel and wiring that DP & L alleges caused the fire. In fact, it was not disputed that the Gayhearts were responsible for maintaining their own electrical system. Thus, DP & L's fifth assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

Wolff and Fain, JJ., concur.