JOURNAL ENTRY AND OPINION.
{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} Plaintiff-appellant, Pacific Indemnity Insurance Company appeals the trial court granting a motion to dismiss for lack of subject matter jurisdiction filed by defendant-appellee, The Illuminating Company ("CEI"). In February 2001, plaintiff insured Harriet Leedy against property loss and fire damage to her property located in the city of Gates Mills, Ohio. On February 28, 2001, after a severe storm, CEI attempted to restore electrical service to Leedy's property. According to plaintiff, during the course of CEI's work, a power surge occurred when CEI jerry-rigged an electric service cable without Leedy's knowledge or consent.
 {¶ 3} Plaintiff filed a complaint[1] against CEI in which it alleges the power surge caused more than $40,000 personal property damage. Plaintiff asserts two claims in its complaint: first, that CEI was negligent in failing to use due care at Leedy's property; second, that CEI breached an oral contract to perform its work in a workmanlike manner.
 {¶ 4} CEI responded to plaintiff's complaint by filing a motion to dismiss pursuant to Civ.R. 12(B)(1). In its motion, CEI argued the trial court lacked subject matter jurisdiction because The Public Utilities Commission of Ohio ("PUCO") has exclusive jurisdiction over plaintiff's claims. CEI argued plaintiff's claims are governed by R.C. 4905.26[2]
because they ultimately relate to electrical service at Leedy's property. The trial court granted CEI's motion and plaintiff now appeals. Plaintiff presents one assignment of error for review:
 {¶ 5} The trial court erred in dismissing appellant's common law tort claim and common law contract claim since the puco does not have exclusive jurisdiction over these claims and the claims neither involved a "service-oriented" claim, a filed tariff nor concerned a "practice" of the public utility.
 {¶ 6} Plaintiff maintains that PUCO does not have exclusive jurisdiction over its claims because they are not related to the type of service problems included in R.C. 4905.26. According to plaintiff, its claims are common-law tort and contract claims and, therefore, do not fall under PUCO's exclusive jurisdiction. We agree.
 {¶ 7} Once a party files a Civ.R. 12(B)(1) motion to dismiss, the trial court determines whether the complaint contains a cause of action that it has authority to decide. Brethauer v. Federal ExpressCorporation, et al. (2001), 143 Ohio App.3d 411. When the motion involves the issue of a court's subject matter jurisdiction, that issue "cannot be waived and judgment entered without such jurisdiction is void ab initio."Reynolds v. Clark, Cuyahoga App. No. 80210, 2002-Ohio-5464 citingBrethauer, at 413; Southgate Development Corp. v. Columbia GasTransmission Corp. (1976), 48 Ohio St.2d 211, paragraph one of the syllabus. On appeal, we conduct a de novo review of a Civ.R. 12(B)(1) motion.
 {¶ 8} "[W]here circumstances determining jurisdiction may be subject to more than one interpretation, then the basis of the complaint alone is insufficient to support a dismissal in absence of additional inquiry." Harris v. Ohio Edison Co. (Aug. 17, 1995), Mahoning App. No. 94 C.A. 84, 1995 Ohio App. LEXIS 3381, at *7.
 {¶ 9} In the case at bar, CEI's motion to dismiss plaintiff's complaint was based entirely on the face of that complaint. CEI did not attach any evidentiary materials to its motion. CEI simply argued that plaintiff's two claims, negligence and breach of contract, were subject to PUCO's exclusive jurisdiction because both of them were unambiguously related to the type of utility service described in R.C. 4905.26.
 {¶ 10} R.C. 4901.01 et seq. is Ohio's statutory framework for regulating the business activities of public utilities. "The General Assembly has by statute pronounced the public policy of the state that the broad and complete control of public utilities shall be within the administrative agency, the Public Utilities Commission." KazmaierSupermarket, Inc. v. Toledo Edison Company (1991), 61 Ohio St.3d 147,150-151.
 {¶ 11} "The commission has exclusive jurisdiction over various matters involving public utilities, such as rates and charges, classifications, and service, effectively denying to all Ohio courts (except this court) any jurisdiction over such matters." State ex rel.Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas
(2002), 97 Ohio St.3d 69, 72, 2002-Ohio-5312, quoting State ex rel.Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas
(2000), 88 Ohio St.3d 447, 450.
 {¶ 12} In some circumstances, however, courts "retain limited subject-matter jurisdiction over pure common-law tort and certain contract actions involving utilities regulated by the commission." Id. InCuyahoga Cty. Court of Common Pleas, supra, the Ohio Supreme Court determined that respondent's contract claims against relator utility did not fall within the exclusive jurisdiction of PUCO. In that case, respondent had asserted that its contract with relator was void because of indefiniteness and lack of consideration. Id., at 75.
 {¶ 13} In 1995, the Ohio Supreme Court listed several tort and contract cases in which various courts determined PUCO did not have exclusive jurisdiction. The Court stated as follows: "Other courts retain limited subject matter jurisdiction over tort and some contract claims involving utilities regulated by the commission. See, e.g., KazmaierSupermarket, Inc. v. Toledo Edison Co., supra, 61 Ohio St.3d at 154,573 N.E.2d at 660 (pure common-law tort claims may be brought in common pleas court); Kohli v. Pub. Util. Comm. (1985), 18 Ohio St.3d 12, 18 OBR 10,479 N.E.2d 840 (failure to warn landowners of dangers regarding voltage actionable in common pleas court); Milligan v. Ohio Bell Tel. Co.
(1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575, paragraph three of the syllabus (invasion of privacy actionable in common pleas court);Marketing Research Serv., Inc. v. Pub. Util. Comm. (1987),34 Ohio St.3d 52, 517 N.E.2d 540 (commission has no jurisdiction to resolve breach of contract dispute concerning provision of interstate telecommunications service). But, see, Gallo Displays, Inc. v. ClevelandPub. Power (1992), 84 Ohio App.3d 688, 618 N.E.2d 190 (common-law nuisance claim against utility not actionable in common pleas court)."State ex rel. Ohio Edison Co. v. Parrott (1995), 73 Ohio St.3d 705, 708; see also, Richard A. Berjian, D. O. Inc., v. Ohio Bell Tel. Co. (1978),54 Ohio St.2d 147 (common-law negligence and contract).
 {¶ 14} In State ex Rel. Ohio Edison Co. v. Morris (Dec. 3, 1984), Stark App. No. CA-6432, 1984 Ohio App. LEXIS 11825, plaintiff filed in common pleas court a complaint alleging damage to his livestock as a result of stray voltage after the utility company had installed electrical service. The court determined that because plaintiff's claim was not a "service" complaint as described in R.C. 4905.26, it did not fall under PUCO's exclusive jurisdiction.
 {¶ 15} The court explained: It is apparent that the P.U.C.O. has adopted no specific regulations dealing with the phenomenon of neutral-to-earth voltage or stray voltage. There is a sense in which every claim against a public utility of negligence (be it violation of a common law or statutory duty), is a complaint involving the "service" of such utility. A person injured as a result of the negligent operation of a utility's vehicle on the public highway, in a sense, has a complaint about the service of the utility. If utility lines are strung sufficiently close to a building that in a wind shingles are knocked off, the claim is arguably a complaint about the service rendered by the public utility. Id., at *11-12.
 {¶ 16} In deciding whether an action is service-related and belongs under PUCO's exclusive jurisdiction, some courts approach the issue by posing two questions. First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a "practice" normally authorized by the utility? If the answer to either question is in the negative, courts routinely find that those claims fall outside PUCO's exclusive jurisdiction.[3]
 {¶ 17} In Gayheart v. Dayton Power Light Co. (1994),98 Ohio App.3d 220, 648 N.E.2d 72, plaintiffs claimed the utility company was negligent in allowing a power surge to enter their property. Determining that the case did not come under PUCO's exclusive jurisdiction, the court stated: "In the present case, there is no evidence to suggest that DP L authorized a power surge or that such a power surge was a `practice' engaged in regularly by DP L. Instead, the power surge alleged is an isolated act of negligence. In fact, the crucial question presented in this case involved deciding which of two possible causes of the fire occurred — the power surge or faulty wiring — not deciding whether any `service' rendered by DP L was unreasonable. The expertise of PUCO in interpreting regulations is not necessary to the resolution of this case. Rather, this is a case that is particularly appropriate for resolution by a jury. Thus, the trial court properly exercised jurisdiction over the claim." Id., at 229; see, Senchisin v. Ameritech (Aug. 22, 1997), Trumbull App. No. 96-T-5539, 1997 Ohio App. LEXIS 3788 (breach of contract action did not require PUCO's technical expertise).
 {¶ 18} We reject CEI's reliance upon the case of Lawko v.Ameritech Corporation, (Dec. 7, 2000), Cuyahoga App. No. 78103, 2000 Ohio App. LEXIS 5687. First, Lawko is inapposite to the facts before us because, contrary to CEI's characterization of the case, Lawko did not involve a power surge. Moreover, Lawko rejected Gayheart's use of a "practice" standard in determining whether plaintiff's claim was related to the type of service described in R.C. 4905.26.
 {¶ 19} In Lawko, supra, this court stated: "We do not find the analysis in Gayheart persuasive. As the Supreme Court of Ohio noted inKazmaier Supermarket, supra, the basis for determining whether PUCO has exclusive jurisdiction is a determination regarding whether a matter involves claims which are in essence rate or service-oriented — not whether a claim involves a common "practice" of the utility * * *." Id., at *12.
 {¶ 20} In the present case, we comfortably rely on Judge Brogan's use of a "practice" standard in Gayheart because that standard is expressly part of the legislative scheme under 4905.26.[4]
Accordingly, CEI's reliance on Lawko is misplaced.
 {¶ 21} In Harris, supra, plaintiffs sustained property damage as a result of a power surge. Plaintiffs argued their electrical system surged because of the utility company's negligence in connecting a neutral tap. The court held that because plaintiff's claims — failure to investigate and failure to correct a dangerous condition — were subject to more than one interpretation, the action constituted a common-law negligence matter and thus PUCO did not have jurisdiction.
 {¶ 22} In Mid-American Fire Cas. Co. v. Gray (June 15, 1993), Montgomery App. No. 13763, 1993 Ohio App. LEXIS 3036, the court determined the utility company's serviceman had failed to respond promptly to repeated requests for assistance after a tree-cutting service severed utility lines at the insured's property. The court determined that PUCO did not have exclusive jurisdiction because the serviceman's "failure to act did not constitute a `practice related to service' as contemplated by the statute * * * but was an isolated individual act of negligence falling within the jurisdiction of the court of common pleas." at *7.
 {¶ 23} In the case at bar, we find the analysis and facts of the above-cited cases applicable to the events described in this case. From the face of plaintiff's complaint alone, we cannot say the substance of its claims fall unequivocally within PUCO's exclusive jurisdiction. CEI has failed to present any evidence that jerry-rigging utility service lines is one of its regular "practices." Further, CEI has not shown why the decision to jerry-rig Leedy's service line requires PUCO's administrative expertise.
 {¶ 24} Plaintiff's claims can be easily characterized as pure tort and contract claims rather than the type of service claims described in R.C. 4905.26. Without additional inquiry into these questions, we conclude that plaintiff's claims are subject to more than one interpretation. Under these circumstances, dismissing plaintiff's complaint under Civ.R. 12(B)(1) was error. Harris, supra.
 {¶ 25} For all the foregoing reasons, plaintiff's sole assignment of error is sustained. The judgment of the trial court is reversed and this matter remanded for proceedings consistent with this opinion.
Judgment accordingly.
This cause is reversed.
ANNE L. KILBANE, P.J., and ANN DYKE, J., concur.
[1] Plaintiff is asserting its rights to subrogation in this case after paying Leedy's claim under an insurance policy it issued to her.
[2] R.C. 4905.26 provides the procedure for filing service complaints. It states as follows: "Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. Such notice shall be served and publication made not less than fifteen days nor more than thirty days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time."
[3] We note some cases in which the defendant utility company never raised the jurisdictional issue. See, Kohli, supra; Thompson v. Ohio FuelGas Co. (1967), 9 Ohio St.2d 116; Miami Valley Regional Transit Auth. v.Dayton Power Light Co. (Nov. 19, 1999), Montgomery App. No. 17652, 1999 Ohio App. LEXIS 5498; Dames v. Cleveland Elec. Illuminating Co.
(Mar. 29, 1996), Ashtabula App. No. 95A0045, 1996 Ohio App. LEXIS 1211.
[4] In part, R.C. 4905.26 states, "* * * or practice affecting or relating to any service furnished by said public utility * * *."