OPINION
{¶ 1} Paul Hundley appeals from a judgment of the Montgomery County Area Two Court, which dismissed his claims against Vectren Energy Delivery ("Vectren") based on the lack of subject matter jurisdiction and the doctrine of res judicata.
 {¶ 2} Hundley has filed two pro se actions against Vectren, based upon alleged overcharges and mathematical errors in his gas utility bills. As described by Hundley, the first action, case number CVI-03-00017, involved a perceived "general accounting error." According to Vectren, Hundley claimed that he had been overcharged on a number of bills issued through December 2002. After a trial on the merits, during which Vectren submitted "voluminous evidential information," the court ruled in favor of Vectren. After receiving the trial court's decision, Hundley reviewed the bills line by line to compare them to the Public Utilities Commission of Ohio ("PUCO") Tariff and to figure out how the billing for gas usage was done. Upon finding alleged additional errors, Hundley sought a new trial. The trial court denied the motion. Hundley did not appeal.
 {¶ 3} Hundley's second lawsuit, case number CVI-03-00331, the one at issue in this appeal, was filed on March 12, 2003, based upon his "auditing" of his bills. He set forth seven claims: (1) Vectren violated Admin R. 4901:1-29-03; 1-29-08; and 1-29-12 by charging him a late fee for a bill in dispute ("Count One"); (2) Vectren overcharged the Gas Cost Recovery Rate ("GCR") allowed by PUCO on two occasions where the bill was assessed and on three occasions where the bill was cancelled ("Count Two"); (3) Vectren made mathematical errors in computing the GCR charge ("Count Three"); (4) Vectren improperly charged for gas used in a previous month at a higher GCR cost in the next month ("Count Four"); (5) Vectren charged a higher GCR than allowed ("Count Five"); (6) Vectren exceeded the PUCO tariff on base rate charges 17 out of 18 times that bills were issued ("Count Six"); and (7) Vectren overcharged by adding a PIP rider charge in excess of the allowed tariff ("Count Seven"). Vectren filed a motion to dismiss Hundley's action, arguing that PUCO had exclusive jurisdiction over Hundley's claims and, alternatively, that his claims were barred by the doctrine of res judicata. The trial court sustained Vectren's motion, finding both that it lacked subject matter jurisdiction over the action and that res judicata precluded the claims.
 {¶ 4} Hundley asserts one assignment of error.
 {¶ 5} "As a matter of law, montgomery county district area II court judge, James A Hensley, Jr., erred when decision found (09 April 2003, exhibit 1) for both `res judicata' and `lack of subject matter jurisdiction'."
 {¶ 6} Hundley challenges the trial court's decision to rely upon both a lack of subject matter jurisdiction and res judicata in dismissing his claims. He argues that a court without subject matter jurisdiction does not have the power to dismiss on the grounds of res judicata. He further asserts that if the trial court lacked subject matter jurisdiction in the second action, it likewise must have lacked subject matter jurisdiction in the first action. Thus, he asserts that the judgment in the first action is void. Alternatively, Hundley asserts that if the trial court had subject matter jurisdiction, the second action was improperly precluded under the doctrine of res judicata.
 {¶ 7} In response, Vectren argues that the trial court did not have subject matter jurisdiction over the second action, but that the court of appeals cannot void the judgment of the trial court in case number CVI-03-00017 based on the conclusion that the trial court lacked subject matter jurisdiction in the instant (second) case. In addition, Vectren notes that Hundley apparently now agrees that subject matter jurisdiction is lacking in this litigation, and it asserts that his change in legal position warrants sanctions. As an alternative argument, Vectren contends that the trial court's dismissal based on res judicata must be affirmed by applying the presumption of regularity.
 {¶ 8} The threshold issue in this appeal is whether the trial court properly dismissed Hundley's claims for want of subject matter jurisdiction. R.C. 4905.26 provides, in part:
 {¶ 9} "Upon complaint in writing against any public utility by any person * * * that any rate, fare, charge, toll, rental, schedule, classification, or service, * * * or service rendered * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof * * *."
 {¶ 10} In Gayheart v. Dayton Power Light Co. (1994),98 Ohio App.3d 220, 648 N.E.2d 72, we discussed the scope of PUCO's jurisdiction:
 {¶ 11} "The Ohio Supreme Court has held that PUCO has jurisdiction to adjudicate utility customer complaints related to rates or services of the utility. Kazmaier Supermarket, Inc. v. Toledo Edison Co. (1991),61 Ohio St.3d 147, 573 N.E.2d 655. The purpose of providing PUCO with such jurisdiction is that the resolution of such claims `is best accomplished by the commission with its expert staff technicians familiar with the utility commission provisions.' Id. at 153, 573 N.E.2d at 660. Where PUCO does have jurisdiction as provided by the statute, that jurisdiction is exclusive and reviewable only by the Supreme Court. Stateex rel. N. Ohio Tel. Co. v. Winter (1970), 23 Ohio St.2d 6, 52 O.O.2d 29, 260 N.E.2d 827.
 {¶ 12} "However, PUCO does not have exclusive jurisdiction over every claim brought against a public utility. Contract and pure common-law tort claims against a public utility may be brought in a common pleas court. State ex rel. Ohio Power Co. v. Harnishfeger (1980),64 Ohio St.2d 9, 18 O.O.3d 130, 412 N.E.2d 395; Milligan v. Ohio BellTel. Co. (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575;Steffen v. Gen. Tel. Co. (1978), 60 Ohio App.2d 144, 14 O.O.3d 111,395 N.E.2d 1346. As stated by the Ohio Supreme Court, `the Commission has no power to judicially ascertain and determine legal rights and liabilities * * *.' Milligan, supra, 56 Ohio St.2d at 195, 10 O.O.3d at 354, 383 N.E.2d at 578." Gayheart, 98 Ohio App.3d at 228.
 {¶ 13} In Kazmaier, supra, the Supreme Court of Ohio addressed whether claims based on the use of improper rates were within the exclusive jurisdiction of PUCO. Therein, Kazmaier Supermarket had alleged that it was billed under the wrong rate schedule for a specified period of time, that it was charged an excessive rate thereby, that the public utility failed to monitor its rate and billing process properly, and that the utility wrongfully charged a higher rate than that authorized under its tariff. Kazmaier, 61 Ohio St.3d at 153. The court concluded that the claims should have been brought before PUCO, pursuant to R.C. 4905.26.Id. It reasoned:
 {¶ 14} "The root of the complaint is that the rate imposed by Toledo Edison was unreasonable and in violation of law. Although the allegations of the complaint seem to sound in tort and contract law, it must not be forgotten that the contract involved is the utility rate schedule. A dollar determination of the amount of the rate overcharge, if any, would require an analysis of the rate structure and various charges that were in effect under each of the tariff schedules during the period. This process of review and determination of any overcharges, and of the duty of the utility, under the circumstances, to disclose any lower rates available to the customer, is best accomplished by the commission with its expert staff technicians familiar with the utility commission provisions." Id. at 153.
 {¶ 15} Here, in Counts One, Two, Four, Five, Six and Seven of his complaint, Hundley has alleged that he was charged late fees in violation of law and that he was charged rates in excess of the allowed tariff. The essence of these claims is that Hundley was subjected to unjust or unreasonable rates or charges. In raising these claims, Hundley has engaged in the kind of analysis that the Kazmaier court indicated was best accomplished by PUCO, as evidenced by the exhibits attached to his complaint. Thus, these claims fall squarely within the confines of R.C.4905.26. Accordingly, Counts One, Two, Four, Five, Six and Seven fall within PUCO's exclusive jurisdiction. The trial court's dismissal of these claims for lack of subject matter jurisdiction was proper. However, because subject matter jurisdiction over these claims was lacking, the trial court had no power to rely upon res judicata as an alternative basis for their dismissal.
 {¶ 16} In Count Three, Hundley alleges an error of a different ilk. He alleges that Vectren merely made mathematical errors in the computation of the amount that he owed. Specifically, in Exhibit 1 to his complaint, Hundley indicates that on February 4, 2002, he should have been billed $100.10, based on the GCR ($0.49068 per CCF) and the amount of CCF used (204), but that he was charged $107.60, resulting in an overcharge of $7.50. In Exhibit 2, Hundley indicates that on May 3, 2002, he was erroneously billed $28.86, rather than $20.52 ($0.34778/CCF × 59 CCF), resulting in an overcharge of $8.14. Thus, Hundley has asserted that Vectren made two mathematical errors in calculating the amount billed, resulting in a total overcharge of $15.64. Hundley has not alleged an error in setting the rate or in assessing other charges. Rather, he has alleged isolated acts of negligence in performing the mathematical calculations. The expertise of PUCO is not necessary to the resolution of this claim. See Gayheart, 98 Ohio App.3d at 229. Accordingly, we conclude that Count Three constitutes a claim over which the trial court had subject matter jurisdiction.
 {¶ 17} Because the trial court could exercise subject matter jurisdiction over Count Three of Hundley's complaint, we now turn to whether that claim was properly dismissed under the doctrine of res judicata. In Grava v. Parkman Twp., 73 Ohio St.3d 379, 653 N.E.2d 226,1995-Ohio-331, the Supreme Court of Ohio held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at 382. Adopting the doctrine of res judicata as set forth in 1 Restatement of the Law 2d, Judgments (1982), Section 24(l), the supreme court stated: "`When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. The court defined a "transaction" as "a common nucleus of operative facts." Id.
(citing comment b to § 24 of the Restatement of Judgments). Thus, as explained by the supreme court, the doctrine of res judicata precludes a plaintiff from litigating in a subsequent action "all claims which were ormight have been litigated in the first lawsuit." Id. (emphasis added);Natl. Amusements, Inc. v. City of Springdale (1990), 53 Ohio St.3d 60,62, 558 N.E.2d 1178. A plaintiff must "present every ground for relief in the first action, or be forever barred from asserting it." Grava,73 Ohio St.3d at 382; McCory v. Clements, Montgomery App. 19043, 2002-Ohio-2060.
 {¶ 18} Hundley asserts that since the trial court lacked subject matter jurisdiction over the claims in case number CVI-03-00331, the trial court likewise lacked subject matter jurisdiction over his claims in his first action. Hundley argues that Vectren's reliance on his first case as a basis for its res judicata argument permits us to review and to vacate the judgment in case number CVI-03-00017. Alternatively, he asserts that res judicata was not applicable, because the claims in his second suit differed significantly from those in his first. In response, Vectren argues that Hundley never appealed from the judgment in his first suit, and the records therein have not been made part of this appellate record. Vectren contends that absent such inclusion, the judgment of the trial court must be accorded the presumption of regularity and legality upon review.
 {¶ 19} As described by Hundley, his first action concerned "a general accounting error." He indicates that he "took the Jan of 2002 bill, added up what he paid against what the bill said he owed through Dec 2002 and found [Vectren] owed $37.90." In the interest of providing a complete and thorough analysis and of having an accurate understanding of Hundley's claim in his first action, we have opted to review the proceedings in case number CVI-03-00017. We note that both parties have referenced and described that earlier proceeding, and Vectren implicitly invited the trial court to take judicial notice of that action in ruling upon the motion to dismiss. As with Count Three in the instant action, Hundley's claim in his first suit was primarily based on mathematical errors by Vectren in calculating the amount owed. Hundley neither challenged the rates that were used nor argued that they were unlawful or unreasonable. Thus, the claim fell within the trial court's subject matter jurisdiction, and the trial court's ruling on that claim was a valid judgment on the merits.
 {¶ 20} Hundley contends, in essence, that Count Three does not arise out of the same transaction or common nucleus of operative facts as his first action. We disagree. Both claims are based upon the invoices that Hundley received from Vectren between January and December of 2002. Although Hundley focuses on different mathematical errors in his second action, Hundley could have discovered these errors prior to bringing his first lawsuit, and he may not raise new challenges to the mathematical calculations on the same invoices in a subsequent proceeding. We emphasize that the Supreme Court of Ohio has stated that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit" and that "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Grava, 73 Ohio St.3d at 382. Accordingly, we conclude that the trial court properly invoked the doctrine of res judicata and dismissed Count Three of Hundley's complaint in this action.
 {¶ 21} In summary, trial court properly dismissed Counts One, Two, Four, Five, Six, and Seven of Hundley's complaint for want of subject matter jurisdiction. The PUCO has exclusive jurisdiction over these claims. The trial court had subject matter jurisdiction over Count Three of Hundley's complaint, which merely alleged mathematical errors in computing the amount owed. Because Hundley should have raised the allegations in Count Three in his first action, this Count was properly dismissed on the ground of res judicata. To the extent that Counts One, Two, Four, Five, Six and Seven were dismissed, in the alternative, under the doctrine of res judicata, the trial court erred because it lacked the power to make such a ruling. Likewise, to the extent that Count Three was dismissed for lack of subject matter jurisdiction, that ruling was erroneous. However, because the trial court also had a proper basis for the dismissal of Hundley's claims, those errors are harmless.
 {¶ 22} Hundley's assignment of error is overruled.
 {¶ 23} Vectren has sought sanctions against Hundley for allegedly reversing his position on whether the trial court had subject matter jurisdiction in this (second) action. It argues that Hundley now has conceded that his actions should not have been instituted in small claims court. Vectren indicates that it has incurred significant costs as a result of the filing of Hundley's two lawsuits and that the cost and burden of this appeal likewise appear to be the product of frivolous conduct.
 {¶ 24} As noted by Vectren, Hundley appears to concede in his appellant's brief that the trial court lacked subject matter jurisdiction. However, he states in his reply brief that "[t]he confusion created by the ruling, `Res Judicata' and no jurisdiction [led him] to search for the appropriate jurisdiction and [that he] is asking the Appeals Court to decide the jurisdiction where [he] may receive justice . . ." In addition, Hundley has asserted that, assuming that the trial court had subject matter jurisdiction, res judicata should not preclude his claims. Based on these arguments, we decline to sanction Hundley for frivolous conduct. As it turns out, the trial court did have subject matter jurisdiction over one claim. Resolution of the subject matter jurisdiction issue in this case has not been free of difficulty. Small claims courts have been created in part to provide pro se litigants with a forum. Although corporate defendants may be compelled to expend substantial funds to defend small claims, sincere pro se litigants should normally not be sanctioned should they not prevail. Accordingly, we conclude that Hundley's conduct does not warrant sanctions.
 {¶ 25} The judgment of the trial court will be affirmed. Vectren's motion for sanctions will be overruled.
GRADY, J. and YOUNG, J., concur.