CAMPBELL, Appellant,

v.

COLLEY et al., Appellees.

[Cite as *Campbell v. Colley* (1996), 113 Ohio App.3d 14.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 95CA2389.

Decided July 25, 1996.

*Kimble, Stevens, Young, Clark & Rodeheffer* and *Stephen C. Rodeheffer,* for appellant.

*Hanbury, Potter & Colley* and *John I. Hanbury,* for appellees.

KLINE, Judge.

Plaintiff-appellant Lois Jean Campbell filed a complaint in the Scioto County Court of Common Pleas for damages resulting from a collision between appellant's automobile and the ambulance driven by defendant-appellee Timothy K. Colley on behalf of defendant-appellee Life Ambulance, Inc. ("Life"). After the conclusion of appellant's case, the trial court granted appellees' motion for a directed verdict. Appellant appeals from this judgment and assigns the following error:

"The trial court erred in granting a directed verdict in favor of the appellees on the basis of the immunity extended by Section 3303.21 of the Ohio Revised Code."

A review of the record reveals the following pertinent facts. On the morning of September 7, 1991, appellee Colley, an advanced emergency medical technician ("EMT"), and another Life employee were dispatched to Heartland West, a nursing home, to transport a woman with an elevated temperature to the

emergency room at Scioto Memorial Hospital. Life has a policy of treating all elevated temperatures and calls from nursing homes as emergencies, which means that the ambulance travels with its lights and sirens on.

Colley testified that he was driving the ambulance west on Coles Boulevard near the intersection of Coles Boulevard and Pauline Avenue with the lights and sirens on when he first saw appellant in her car. Colley testified that he saw appellant enter the intersection when the ambulance was approximately six hundred feet away from her. Appellant stopped her car, and Colley testified that he slowed down and moved into the eastbound lane to pass appellant. Colley believed that he had established eye contact with appellant and that he could safely maneuver around her. When the ambulance was close to appellant, appellant accelerated farther into the intersection. Colley testified that it was too late to avoid hitting appellant, so he tried to cut to the rear of her car in order to minimize any injuries. The ambulance collided with appellant's car, and appellant sustained personal injuries, including a fractured ankle, and damage to her vehicle.

Appellant submitted testimony to refute appellees' contention that the accident was unavoidable. Appellant argued that Colley and the dispatcher were at fault for failing to ascertain whether the call to Heartland West was truly an emergency requiring Colley to travel at a high rate of speed. Appellant produced evidence that once Colley and appellant collided, the patient at Heartland West was virtually forgotten for almost an hour, indicating that the call was not an emergency and that the Life employees did not believe there was an emergency from the beginning. Appellant also faulted Life for its policy of treating all calls concerning elevated temperatures as emergencies.

At the close of appellant's case, appellees moved for a directed verdict, arguing that they were immune from liability pursuant to R.C. 3303.21.[1] Appellant's response to appellees' motion focused on the actions of the dispatcher and the other Life employees that suggested that there was no emergency. Appellant argued that the absence of an emergency barred appellees from using any immunity granted by statute. The trial court ordered the parties to brief the issues, considered the parties' arguments to the court, and then announced that the motion was granted. The trial court stated that appellees were immune from civil liability pursuant to R.C. 3303.21 and that there was no evidence of willful or wanton misconduct.

---

1. R.C. 3303.21 is the statute concerning civil immunity of emergency medical personnel and agencies that was in effect at the time of this accident. This section was amended and renumbered on November 12, 1992. See R.C. 4765.49. This statute was further amended on November 24, 1995.

In her appellate brief, appellant asserts three different bases for her assignment of error. Before addressing the merits of appellant's arguments, we note the applicable standard of review of directed verdicts. Civ.R. 50(A)(4) provides as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

This rule requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 408, 648 N.E.2d 856, 857–858, citing *Broz v. Winland* (1994), 68 Ohio St.3d 521, 526, 629 N.E.2d 395, 398–399. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus. See, also, *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469–470.

 Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. *Id.* at 68–69, 23 O.O.3d at 116, 430 N.E.2d at 937–938. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a *de novo* review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961; *Keeton v. Telemedia Co. of S. Ohio*, 98 Ohio App.3d at 409, 648 N.E.2d at 858–859.

Appellees assert that they are immune from civil liability pursuant to R.C. 3303.21. R.C. 3303.21(D) provided as follows:

"No EMT–A, ADV EMT–A, paramedic, or other operator, who holds a valid * * * driver's license * * * and who is employed by an emergency medical service that is not owned or operated by a political subdivision * * *, is liable in civil damages for injury, death, or loss to persons or property that is caused by the EMT–A's, ADV EMT–A's, paramedic's, or operator's operation of an ambulance *while responding to or completing a call for emergency medical care or*

*treatment, unless the operation constitutes willful or wanton misconduct* or does not comply with the precautions of section 4511.03 of the Revised Code." (Emphasis added.)

This section further provides that an emergency medical service is not liable in damages in a civil action for any injury caused by the operation of an ambulance by its employee if this section grants the employee immunity from civil liability for the injury. *Id.*

■ Appellant first argues that there is a jury question as to whether appellees were responding to an emergency. Appellant asserts that an elevated temperature does not constitute an emergency. Appellant notes that the nurse who called appellees for the transport from Heartland West testified that she did not believe an emergency existed. Furthermore, appellant argues that appellees' neglect of the patient at Heartland West after the accident occurred belies any belief appellees may have had that an emergency existed. If appellees were not responding to an emergency, their conduct would not fall within R.C. 3303.21, and they would therefore be liable for their negligence. By concluding that appellees were immune from liability, the trial court implicitly determined that appellees were responding to an emergency.

■ There is no definition of "emergency medical care or treatment" in the Revised Code.[2] Nonetheless, the evidence shows that Life had a policy of considering any elevated temperature an emergency. The dispatcher testified that, in accordance with the policy, she considered the call to Heartland West an emergency and relayed this information to the EMTs. Consequently, Colley used the lights and siren on the ambulance. Appellees' subjective belief that an emergency existed is sufficient to categorize the run as an effort to provide "emergency medical care or treatment" to the patient. See, *e.g., Moore v. Columbus* (1994), 98 Ohio App.3d 701, 707, 649 N.E.2d 850, 853–854; *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 514, 605 N.E.2d 445, 448, fn. 2. Like fire fighters and police officers, ambulance drivers responding to an emergency are entitled to accept a call at its face value and have no duty to independently determine whether an actual emergency exists or to question the judgment of the

---

2. The amendments to R.C. 3303.21(D) changed "emergency medical care or treatment" to "emergency medical services,". which is defined in Ohio Adm.Code 3301–65–01, the section providing for the definitions applicable to Emergency Medical Technicians–Ambulance (EMT–A):

"(C) 'Emergency medical services' means any medical care procedure or procedures administered by an EMT–A or EMT–P or other qualified persons as defined and certified by the Ohio department of education to the victims of serious illness or injury prior to a victim receiving professional medical care from a physician and/or hospital." Ohio Adm.Code 3301–65–01(C).

dispatcher. See *Agnew v. Porter* (1970), 23 Ohio St.2d 18, 52 O.O.2d 79, 260 N.E.2d 830, paragraph two of the syllabus. Furthermore, courts have interpreted the word "emergency" broadly as it applies to the characterization of situations to which emergency personnel respond. See *Moore v. Columbus*, 98 Ohio App.3d at 706, 649 N.E.2d at 853 (definition of "emergency" is open-ended and not limited to inherently dangerous situations or situations in which human life is in danger); *Goebel's Emergency Med. Serv., Inc. v. Sandusky Cty. Bd. of Commrs.* (1989), 58 Ohio App.3d 25, 26–27, 567 N.E.2d 1330, 1332 (the term "emergency patient" does not require that the patient's condition be life-threatening).

Construing the evidence most favorably for appellant, we find that appellant has made no demonstration that the call to Heartland West was not an emergency. Notwithstanding the possibility that an emergency did not in fact exist, Colley's subjective belief that an emergency existed is sufficient to categorize the call as one for "emergency medical care or treatment."

Appellant further argues that a jury question exists as to whether Colley's operation of the ambulance constituted wanton and willful misconduct. Appellant asserts that Colley was driving thirty miles per hour over the posted speed limit in a residential neighborhood on a foggy morning in response to a "simple elevated temperature" call. Furthermore, appellant contends that Colley saw appellant and appreciated the danger she was in from six hundred feet away and yet refused to apply the brakes. Appellant states that Colley failed to recognize the unpredictability of other drivers' reactions to emergency vehicles. If Colley was operating the ambulance in a wanton and willful manner, appellees would not be immune from liability pursuant to R.C. 3303.21(D).

"Willful and wanton misconduct" has been defined as "behavior demonstrating a deliberate or reckless disregard for the safety of others." *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 127, 528 N.E.2d 578, 582. Wanton misconduct is the failure to exercise any care toward one to whom a duty of care is owed under circumstances in which the probability of harm is great and that probability is known to the tortfeasor. *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. Willful conduct "implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse." *State v. Earlenbaugh* (1985), 18 Ohio St.3d 19, 21, 18 OBR 16, 17–18, 479 N.E.2d 846, 848–849. See, also, *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 246, 80 N.E.2d 122, 127.

The trial court noted that appellant did not allege willful and wanton misconduct in her complaint nor did she present evidence of willful or wanton misconduct at the trial. This court agrees with the trial court's assessment.

Appellant's complaint alleged that Colley operated the ambulance in a negligent fashion in that the ambulance was traveling at an excessive rate of speed for the weather conditions and that Colley failed to have due regard for the safety of other persons using the roadway.

Even if appellant had alleged willful and wanton misconduct, the evidence presented did not demonstrate any more than possible negligence on appellee Colley's part. Colley testified that he saw appellant, thought that he had made eye contact with her, and believed that he could safely maneuver around her. Once Colley realized that a collision was imminent, he tried to minimize the damage to appellant and her car. There was no eyewitness testimony at trial establishing the speed at which the ambulance was traveling. Construing the evidence most strongly in favor of appellant, this court finds that reasonable minds could come to only one conclusion upon the evidence submitted, and that conclusion is that Colley did not act in a wanton or willful manner. Consequently, appellees are immune from civil liability for Colley's actions pursuant to R.C. 3303.21(D).

Finally, appellant argues that Life is not immune from liability for the negligence of its dispatcher.[3] There are two aspects of this argument: first, that Life is liable for the dispatcher's negligence in failing to inquire about the nature of the call and dispatching an ambulance as if an emergency existed when there was only an elevated temperature, and second, that Life is negligent in its own right for its policy of treating all elevated temperatures as emergencies and for not directing its employees to ascertain whether an emergency in fact exists. This court will first examine the dispatcher's negligence.

■ R.C. 3303.21(E) provided as follows:

"No employee or agent of an emergency medical service who receives requests for emergency medical care or treatment that are directed to the service, dispatches EMT–As, ADV EMT–As, or paramedics in response to such requests, communicates such requests to those employees or agents of the service who are authorized to dispatch emergency medical technicians, or performs any combination of these functions for the service, is liable in civil damages for injury, death, or loss to persons or property resulting from his acts or omissions in the performance of his duties for the service, unless the employee's or agent's

---

3. Appellees assert that appellant did not raise this argument in the trial court and has therefore waived its review on appeal. In response, appellant cites *Columbus v. Rogers* (1975), 41 Ohio St.2d 161, 70 O.O.2d 308, 324 N.E.2d 563, for the proposition that an argument not raised below is acceptable for review on appeal if the overall issue was raised below. Appellant did argue in the trial court that the immunity statutes do not apply, and in the interest of justice, we will review the argument.

conduct in the performance of his duties constitutes willful or wanton misconduct."

This section extends immunity to dispatchers for negligent acts unless those acts constitute willful or wanton misconduct. Appellant has not alleged willful or wanton misconduct on the part of the dispatcher. Consequently, the dispatcher is immune from liability. Nevertheless, appellant asserts that, even if the dispatcher is not liable for her negligence, Life is liable for its dispatcher's negligence.

Appellant notes that R.C. 3303.21(E) does not contain the provision that appears in R.C. 3303.21(D), explicitly granting immunity to an emergency medical service for any injury caused by its employee if the employee is entitled to immunity pursuant to the statute. Appellant argues that the absence of this provision entitles her to recovery from appellee Life for the dispatcher's negligence. Appellant cites *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65, 68, 526 N.E.2d 300, 303, fn. 3, for the proposition that the grant of immunity by R.C. 3303.21 is in derogation of the common law and therefore should be strictly interpreted in the manner appellant suggests.

Appellees counter that appellant's argument misconstrues the concept of vicarious liability under the doctrine of *respondeat superior*. Pursuant to this doctrine, an employer is liable for damages caused by the negligent acts of its employee if the employee was acting within the scope of his or her employment. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 329, 587 N.E.2d 825, 828–829. In *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1243–1244, the Supreme Court of Ohio stated as follows:

"It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer."

In *Strock v. Pressnell*, Pressnell's employer could not be held liable because no action could be maintained against Pressnell. See, also, *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587; *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 737, 612 N.E.2d 357, 362–363. Accordingly, there must first be liability on the part of the employee before the employer may be liable for the employee's acts. Because the dispatcher cannot be held liable in the case *sub judice* due to the immunity granted by R.C. 3303.21(E), Life cannot be held liable for the dispatcher's acts.

The second aspect to appellant's argument is that Life is negligent in its own right for its policy of treating all elevated temperatures as emergencies and for not directing its employees to ascertain whether an emergency in fact exists. In appellant's second amended complaint, she alleged that Life negligently dispatched, through its agents and employees, an ambulance to respond to a situation that was not an emergency, negligently failed to have a person employed as a dispatcher who was qualified to make appropriate determinations of emergency situations, and negligently failed to have policies in place for the proper determination of when its dispatchers should instruct ambulances to respond in an emergency fashion.

At trial, appellant presented evidence that the dispatcher at the time of this incident was a basic EMT who was trained for dispatching. The dispatcher was not told by the caller from Heartland West that an emergency did or did not exist, and she dispatched the ambulance to respond to an emergency in accordance with Life's policy for elevated temperatures. Two other basic EMTs testified about Life's policy of using lights and siren when responding to a call concerning elevated temperature, and one of those witnesses indicated that other emergency medical services do not share this policy.

None of the evidence presented at trial indicated negligence on the part of Life. The dispatcher on duty was a basic EMT, presumably capable of distinguishing emergency situations from nonemergency situations given the appropriate information. Furthermore, appellant's own exhibits showed that the dispatcher noted the location and nature of the call in compliance with the dispatcher's training manual, which requires dispatchers to note details of a situation such as the location and nature of the call. Although there was some testimony about company policy, only one witness could testify that the policy was not followed by another ambulance service. There was no evidence that the establishment of a policy of treating all elevated temperatures as emergencies constitutes negligence or that Life is abusing its right to categorize a call as an emergency in order to make its runs quicker so that it can complete more business.

After construing the evidence most strongly in favor of appellant pursuant to Civ.R. 50(A)(4), this court finds that reasonable minds could only conclude that appellees are not liable for appellant's damages. Having conducted a *de novo* review of the trial court's judgment, we conclude that the trial court did not err by granting a directed verdict in favor of appellees and we overrule appellant's assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.