OPINION
The Miami Valley Regional Transit Authority and Cincinnati Insurance Company, hereinafter collectively referred to as "RTA," appeal from a judgment of the Montgomery County Court of Common Pleas in favor of the Dayton Power and Light Company ("DPL").
On November 18, 1994, at approximately 3:53 a.m., an automobile struck a DPL utility pole at the corner of Third and Marion Streets in Dayton, breaking it off at ground level. The pole had supported the following: a) three DPL high voltage electrical lines, identified as phases A, B, and C, each carrying 7,200 volts; b) a DPL neutral wire; and c) RTA electrical facilities. As a result of the impact, phase A and the neutral wire fell to the ground. Phases B and C remained suspended, but were sagging due to their own unsupported weight. The circuit breaker at DPL's substation detected an overcurrent on the phases and immediately cut off power to the affected circuit and the three phases.
Two DPL troubleshooters were dispatched to the scene of the accident. Upon arrival, one of the troubleshooters used spotlights to conduct a visual inspection of phases B and C from the ground and did not detect any abnormalities. Additional DPL linemen arrived to begin repairing the pole. Upon their arrival, they also looked over the sagging phases from the ground and found no abnormalities.
By 4:24 a.m., DPL had partially re-energized the suspended phases and by 7:21 a.m., the suspended phases were fully re-energized. At approximately 11:00 a.m., while DPL linemen were in the process of making repairs, phase B broke and fell onto RTA's feeder line, resulting in an explosion that destroyed a nearby RTA substation that supplied power to its trolleys in West Dayton. The parties stipulated that RTA had suffered approximately $235,000 in damages from the destruction of the substation.
After phase B broke and fell to the ground, it was inspected. Two dime-sized burns, approximately two feet apart, were visible on the top part of the phase. The diameter of the phase itself was between the sizes of a nickel and quarter. Each phase was made of seven copper strands twisted together. The burns on phase B had severed five of the seven strands of the copper. The burns would have been visible if the top part of phase B had been inspected from a bucket truck. From the ground, however, the burns on the top part of the phase were not visible.
RTA filed suit against DPL for the damage resulting to the substation alleging that DPL had failed to discharge its duty of care while repairing the power line facilities. DPL denied that it had been negligent.
The case was tried to a jury in November of 1998. At the close of all the evidence, the trial court denied the plaintiffs' oral motion for a directed verdict. The trial court also refused plaintiffs' request to instruct the jury on res ipsa loquitur and superseding causation. The jury returned a verdict in favor of DPL and the trial court entered judgment accordingly. RTA made a motion for judgment notwithstanding the verdict or alternately for a new trial, but the motion was denied by the trial court. RTA now appeals.
RTA asserts three assignments of error.
 I. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF PLAINTIFFS WHEN ELECTRIC UTILITY DEFENDANT FAILED TO INSPECT AND MAINTAIN ITS HIGH VOLTAGE ELECTRIC TRANSMISSION LINE WITH THE HIGHEST DEGREE OF CARE, THEREBY VIOLATING ITS DUTY, AND CAUSING PLAINTIFFS' DAMAGES.
RTA argues that the trial court should have granted its motion for a directed verdict because DPL breached its duty of care as a matter of law when its linemen failed to utilize a bucket truck to inspect the entire circumference of phase B.
"When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue." Campbell v. Colley (1996),113 Ohio App.3d 14, 18, 680 N.E.2d 201, 203. Because a motion for a directed verdict "tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses," it presents a question of law and the appellate court must review the trial court's ruling de novo. Id.
The duty of care that applies to an electrical utility company is well-established in Ohio:
 A power company erecting and maintaining equipment, including poles and wires, upon or along a public road, for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment, and is responsible for any conduct falling short of that standard.
Phillips v. Dayton Power Light Co. (1994), 93 Ohio App.3d 111,116, 637 N.E.2d 963, 966 (quotation omitted); Fortman v. DaytonPower Light Co. (1992), 80 Ohio App.3d 525, 529,609 N.E.2d 1296, 1299.
The record reveals that a number of DPL linemen walked underneath phase B, looking at both sides of the phase to see if any abnormalities were present. There was testimony that DPL's normal practice at accident scenes was to make a visual inspection of the lines from the ground first, and then to utilize the bucket truck if any abnormalities were detected. Several veteran linemen testified that, in their experience, any abnormalities in a phase which were serious enough to pose a hazard would have been visible from the ground. We believe that reasonable minds could differ as to whether the actions of the DPL linemen constituted an inspection with the highest degree of care consistent with the practical operation of DPL's business. Thus, the trial court did not err when it overruled RTA's motion for a directed verdict.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFFS A NEW TRIAL WHEN THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
RTA argues that because the jury's verdict was against the manifest weight of the evidence, the trial court erred when it overruled RTA's motion for a new trial. In support of its argument, RTA asserts that "[t]he most favorable interpretation of the evidence cannot reasonably yield the conclusion that what DPL did was an inspection with the highest degree of care."
"[I]n ruling on a motion for new trial upon the basis of a claim that the judgment `is not sustained by sufficient evidence,' the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." Atkinson v.Internatl. Technegroup, Inc. (1995), 106 Ohio App.3d 349, 358,666 N.E.2d 257, 263, quoting Rohde v. Farmer (1970), 23 Ohio St.2d 82,262 N.E.2d 685, paragraph three of the syllabus. The denial of a motion for a new trial "is committed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." Id. at 357, 666 N.E.2d at 263, citing Rohde, at paragraph one of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. at 357-358, 666 N.E.2d at 263, citing Rohde,23 Ohio St.2d at 87, 262 N.E.2d at 689.
The record reveals that several DPL linemen walked along phase B and looked unsuccessfully for abnormalities. Glen Fisher, a thirty-two year DPL veteran lineman testified about the significant amount of time that would have been required to conduct a bucket truck inspection of the affected portion of phase B. He also stated that, although it had been feasible, he had not felt that it was practical to set up a bucket truck to inspect phase B and that, even if he had seen the burns on B while inspecting from a bucket truck, he was not sure that he would have recognized that it was burned completely through. He also testified that even if he had seen the burns and had determined that B needed to be spliced, under DPL's normal procedures, he would have restored all the power to the area, repairing the pole and reattaching all the phases, including B, and then he would have gone back to splice phase B either later that day or even the next day. Parenthetically, we note that the evidence established that the linemen commonly make certain repairs to the phases while they are fully energized.
Numerous other DPL linemen testified that, based upon their experience, it was most practical to inspect for abnormalities from the ground first in order to save time and to restore power to customers as quickly as possible. They stated that they took their jobs seriously because they knew that mistakes could result not only in their own deaths, but also the deaths of their co-workers.
Based upon our review of the record, we cannot conclude that the jury's determination that DPL had exercised the highest degree of care consistent with the practical operation of its business was against the manifest weight of the evidence. Thus, the trial court did not abuse its discretion when it overruled RTA's motion for a new trial.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON RE [sic] IPSA LOQUITUR AND SUPERSEDING CAUSE.
RTA argues that it was materially prejudiced when the trial court erred by failing to instruct the jury on res ipsa loquitur
and superseding causation as requested.
In Ohio, "[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue." Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591, 575 N.E.2d 828, 832, citing Riley v. Cincinnati (1976),46 Ohio St.2d 287, 297, 348 N.E.2d 135, 142. Requested instructions should ordinarily be given, however, "if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." Murphy, 61 Ohio St.3d at 591, 575 N.E.2d at 832.
"[R]es ipsa loquitur is a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to plaintiff." Hakev. George Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66,262 N.E.2d 703, 705. The doctrine "does not alter the nature of the plaintiff's claim in a negligence action; it is merely a method of proving the defendant's negligence through the use of circumstantial evidence." Jennings Buick, Inc. v. Cincinnati
(1980), 63 Ohio St.2d 167, 170, 406 N.E.2d 1385, 1387-1388.
"To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Hake,23 Ohio St.2d at 66-67, 262 N.E.2d at 705; Jennings Buick, Inc.,63 Ohio St. 2d at 170, 406 N.E.2d at 1388; Gayheart v. Dayton Power LightCo. (1994), 98 Ohio App.3d 220, 230, 648 N.E.2d 72, 78. Res ipsaloquitur does not apply, however, "`where there is direct evidence as to the cause, or where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence.'" Jennings Buick, Inc., 63 Ohio St.2d at 172,406 N.E.2d at 1389 quoting Loomis v. Toledo Rys. Light Co. (1923),107 Ohio St. 161, 169-170, 140 N.E.2d 639, 642.
Fisher testified that phase B had been in the exclusive control of DPL when it fell onto the RTA lines. Terry Smith, a twenty-five year DPL veteran lineman, also testified that DPL had had exclusive control of the scene at the time phase B fell. Further, in the ordinary course of events, utility phases do not fall to the ground while linemen are working on nearby phases absent some negligence on the linemen's part. Thus, we agree with RTA's argument that the trial court erred when it concluded that the evidence did not support the two threshhold prerequisites forres ipsa loquitur.
DPL argues that "the break and fall of the line and resulting damage was caused by the negligence of a person other than DPL, that is, * * * the driver of the [automobile] that hit the pole." Thus, DPL asserts that res ipsa loquitur does not apply to this case because one could reasonably conclude that the damage to the RTA substation was due to a cause other than its own negligence.
The record reveals that at the time the automobile driver hit the pole, the circuit attached to the phases opened, cutting off the voltage to the phases. DPL then arrived at the scene and took exclusive control of the phases and re-energized them. If phase B had fallen due to the automobile driver's negligence and without DPL's intervention, it would have fallen de-energized and no damage would have occurred to the RTA substation. The damage that occurred, however, was a result of DPL's decision to re-energize phases B and C. Thus, DPL's argument is not persuasive.
It is undisputed that DPL re-energized phases B and C following the accident and that phase B fell onto RTA lines, creating some type of electrical surge which caused damage to the RTA substation. The record establishes that both parties knew what had caused the damage. Because there was direct evidence as to the cause of the damage, res ipsa loquitur does not apply to the facts in this case. Thus, the trial court properly concluded that an instruction on res ipsa loquitur should not have been given to the jury, even though it erred in the reasoning for that decision.
RTA also argues that an instruction on superseding causation should have been given to the jury because "[r]e-energizing the circuit before its safety was ascertained was an intervening, or superseding, act of negligence." We agree that an instruction on superseding causation should have been given to the jury because, although the automobile driver's negligence caused the pole to fall, DPL's re-energizing of the phases caused the damage to the RTA substation. We note, however, that the jury concluded in the first interrogatory that DPL had not violated its duty of care. The second interrogatory, which the jury was to answer only if it found that DPL had violated its duty of care, stated, "We, the Jury, do find that the violation of the standard of care by the Defendant, [DPL], did or did not proximately cause damage to the Plaintiffs." The jury, of course, never reached this interrogatory because it concluded that DPL had not violated its duty of care. Thus, any error the trial court committed when it failed to give the instruction on superseding causation was harmless. Clark v. Doe (1997), 119 Ohio App.3d 296, 302,695 N.E.2d 276, 279; Conroy v. Beck (June 6, 1996), Cuyahoga App. No. 69525, unreported, at *5.
The third assignment of error is overruled.
As all of RTA's assignments of error have been overruled, the judgment of the trial court will be affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Jane M. Lynch
Peter F. Von Meister
Paul L. Horstman
Bryan M. Perrero
Hon. Jeffrey E. Froelich