JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Ralph Morenz (Morenz) appeals from the judgment of the trial court which directed a verdict in favor of Defendant-appellees Progressive Casualty Insurance Company and the Progressive Corporation (defendants) on Morenz's claim for invasion of privacy. After a jury trial, judgment was rendered for the defendants on all remaining counts. For the reasons set forth below, we affirm the judgment of the trial court.
{¶ 2} Morenz filed a complaint against Progressive Casualty Insurance Company on February 18, 2000 alleging Negligence, Invasion of Privacy, Breach of Contract, Promissory Estoppel and Intentional Wrongdoings. Morenz filed an amended complaint to join the Progressive Corporation as a defendant. He sought compensatory damages and $2,500,000 in punitive damages on Count Five.
{¶ 3} At the time this lawsuit commenced, Morenz was an employee of defendants but was on medical leave as a result of a long-term disability. Morenz alleged that defendants caused him to suffer from Post Traumatic Stress Disorder (PTSD) as a result of intentional and negligent wrongdoings. Specifically, Morenz alleged that employees of defendants invaded his privacy by asking questions about his sexual orientation and by isolating him. He also alleged that defendants unnecessarily subjected him to gruesome accident scenes and wreckage that involved serious bodily harm during his tenure as a claims adjustor for defendants. Morenz claimed that defendants wrongfully refused to relieve him of these horrific job responsibilities.
{¶ 4} Morenz began working full-time for the defendants at the Cleveland headquarters in January of 1997 in the Customer Service Unit and eventually moved to the Accounting Services Department. In March of 1997, Morenz began exploring the possibility of a transfer and applied for a claims representative position in Savannah, Georgia. Morenz flew to Savannah for an interview at the end of March.
{¶ 5} During the interview, Morenz stated that he inquired into how the office was run and what responsibilities he would have. He stated that there was no mention at that time that he would be responsible for viewing and assessing damage to automobiles involved in fatal accidents or involved in serious bodily injury. Furthermore, Morenz stated that there was no discussion in the interview about the likelihood that he would be exposed to blood and gore in the early weeks of his employment. Morenz did admit, however, that he knew that being a claims adjustor necessarily involved dealing with automobile accidents and he knew that people died in car accidents.
{¶ 6} Following the interview, Mike Thornton of the Georgia office called to offer Morenz an entry level claims representative position in Brunswick, Georgia, rather than Savannah, Georgia. Within one week, Morenz accepted the position in Brunswick. At that time, Thornton suggested that Morenz should live on St. Simons Island. Morenz was unfamiliar with the area and therefore sought information regarding St. Simons Island and living arrangements from his sister, a real estate agent, and from Ward Karsman, the claims adjustor in the Brunswick office with whom Morenz would be working. Morenz did not speak with Karsman at that time about job responsibilities, expectations or Karsman's satisfaction with the job.
{¶ 7} Morenz signed a lease for an apartment on St. Simon's island. In the middle of April, he returned to Cleveland to pursue the training necessary for the claims position. Morenz successfully completed all of the required training before beginning work as a claims representative.
{¶ 8} During his first week as a claims adjustor for Progressive, Morenz alleges that Michelle Outland, his supervisor who had traveled from another Progressive office to orient him to his new job stated, we don't mind gay people in the south. Morenz stated that he immediately changed the subject.
{¶ 9} Morenz testified that he based his expectations of his new position on the description of the Claims Adjustor Position in the New Hire Orientation binder handed out in training. He was of the understanding that, as a new Claims Representative, he would be handling claims for property damage and bodily injury totaling approximately $2,500. Morenz testified that after about a week, he noticed that the claims were much more severe than what he was trained to handle and he did not feel as though he had the appropriate skills to deal with these higher level claims.
{¶ 10} Morenz stated that he immediately expressed concern to Outland. He testified that Michelle told him that this was what the job entailed and that it was not going to change. Morenz testified that when he asked Outland for advice on how to deal with difficult claims, she had offered no constructive suggestions and instead made insensitive comments to him. He stated that Outland's insensitivity continued, even after Morenz told her that he felt overwhelmed by the job and the job was adversely affecting him. Morenz testified that he felt he did not receive adequate training to handle these difficult claims which began to take a toll on him.
{¶ 11} Morenz testified that at some point in his tenure as a claims adjustor, he spoke with a co-worker, Jim Miller. According to Morenz's testimony, the interaction with Miller in July was as follows:
 {¶ 12} Q. And please tell the jury what happened with Jim Miller in July of `98.
 {¶ 13} A. Jim came down to go to a managers' meeting on Jekyll Island, which is right next to St. Simons Island, and he came in to see us. I was the only one, the only one in the office. Ward was gone. And he asked me point-blank, Are you gay?
 {¶ 14} And he caught me by surprise. I just said, Yes.
 {¶ 15} And he said, Well are you leaving because of that?
{¶ 16} And I said, No, I'm not.
 {¶ 17} Q. What else did he say about gay people in the course of that discussion?
 {¶ 18} A. He said that they had lost a gay adjuster in Valdosta and he wanted to make sure that wasn't the reason I was leaving.
(T. 399) Morenz testified that he did not know whether Miller discussed his sexual orientation or shared that information with anyone. Morenz did not complain to anyone within Progressive that he felt he had been discriminated against because of his sexual orientation.
{¶ 19} Morenz stated that as he went through the fall of 1998, he was feeling bad, stopped sleeping, and was very fatigued. He then sought assistance through the Employee Assistance Program (EAP) at Progressive to help him deal with the trauma he felt as a claims adjustor.
{¶ 20} The EAP is a program designed to provide all Progressive employees with the opportunity to seek counseling through trained professionals. Participation in the program is generally confidential, although employees sign a Statement of Understanding prior to participating in the program that delineates exceptions to this confidentiality, including if litigation is brought against Progressive.
{¶ 21} Morenz continued to seek counseling through the EAP and eventually sought long-term disability benefits. After filing suit against Progressive alleging, inter alia, emotional distress, Progressive's legal department subpoenaed Morenz's EAP records. The EAP department complied with the subpoena and turned the records over to Progressive's legal department. Morenz claims this act, in addition to Miller's questioning about his sexual orientation, invaded his privacy.
{¶ 22} Defendants moved for summary judgment, which was denied. The case proceeded to a jury trial on June 5, 2001. At the close of Morenz's case, the trial court granted defendant's motion for a directed verdict on, inter alia, Morenz's claim for invasion of privacy. After the close of the defendant's case, the trial court charged the jury on negligence and negligent infliction of emotional distress.[1] The trial court denied Morenz's requested jury instructions on punitive damages. It is from these rulings that Morenz now appeals, asserting two assignments of error for our review.
 I. {¶ 23} THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST PLAINTIFF ON HIS CLAIM OF INVASION OF PRIVACY.
{¶ 24} Morenz contends that the trial court erred in directing a verdict regarding his invasion of privacy claim. Specifically, Morenz alleges that Progressive employees questioning in regard to his sexual orientation, coupled with Progressive's EAP disclosure of psychological records after the commencement of litigation were sufficient to support a denial of the directed verdict.
{¶ 25} A motion for a directed verdict is properly granted if, after construing the evidence in the light most favorable to the nonmoving party, reasonable minds could only find in favor of movant on a determinative issue. Gliner v. Saint-Gobain Norton Indus. Ceramics Corp. (2000), 89 Ohio St.3d 414, 415, 732 N.E.2d 389, reconsideration denied (2000), 90 Ohio St.3d 1419, 2000-Ohio-210, 732 N.E.2d 457. Koczan v. Graham (Sept. 27, 2000), Lorain App. No. 98CA007248. The court's ruling on a motion for directed verdict should be reviewed de novo. Id., citing Campbell v. Colley (1996), 113 Ohio App.3d 14, 18, 680 N.E.2d 201, discretionary appeal not allowed (1996), 77 Ohio St.3d 1494,673 N.E.2d 150; Howell v. Dayton Power Light Co. (1995),102 Ohio App.3d 6, 13, 656 N.E.2d 957, appeal dismissed (1995),73 Ohio St.3d 1425, 652 N.E.2d 798; Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405, 409, 648 N.E.2d 856. A motion for directed verdict raises a legal question as to the sufficiency of the evidence to take the case to a jury and resolving the motion does not entail weighing the evidence or determining the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69, 430 N.E.2d 935. Morenz essentially avers that testimony regarding Miller's questioning and Outland's comments in regard to Morenz's sexual orientation, in addition to Progressive's disclosure of Morenz's EAP records to Progressive's legal department at the commencement of litigation, justified a denial of the directed verdict on his invasion of privacy claim. We disagree.
{¶ 26} The Ohio Supreme Court first recognized the tort of invasion of privacy in Housh v. Peth (1956), 165 Ohio St. 35,133 N.E.2d 340. Paragraph two of the syllabus states:
 {¶ 27} An actionable invasion of the right of privacy in the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.
{¶ 28} The case at hand deals with the intrusion upon seclusion branch of invasion of privacy. The Supreme Court dealt with this branch of invasion of privacy in Sustin v. Fee (1982), 69 Ohio St.2d 143,431 N.E.2d 992, setting forth the test for intrusion upon seclusion as follows:
 {¶ 29} One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.
(quoting Restatement of the Law 2d, Torts (1977), section 652B); See Rothstein v. Montefiore Home (1996), 116 Ohio App.3d 689 N.E.2d 108; Hidey v. Ohio State Hwy Patrol (1996), 116 Ohio App.3d 744, 689 N.E.2d 89. We find that, in this context, Miller's question regarding Morenz's sexual orientation would not be highly offensive to a reasonable person. Instead of walking away from Miller or responding in such a manner as to alert Miller to his unwillingness to discuss his personal life, Morenz voluntarily answered the question. While he stated that he regretted answering the question, he failed to prove that this question alone would be highly offensive to a reasonable person. In fact, he failed to prove that this question was highly offensive to him. Morenz only submitted evidence to support emotional distress that he endured as a result of his inability to cope with what he was seeing as a claims adjuster, and the isolation he felt living in a remote Georgia community.
{¶ 30} Furthermore, Miller's question was asked in the context of Morenz's overall job satisfaction and comfort of living in the south. Reasonable minds could come to but one conclusion that this isolated question would not be highly offensive to a reasonable person.
{¶ 31} With regard to Morenz's claim that the disclosure of his EAP records to Progressive's legal department invaded his privacy, we note that pursuant to Civ.R. 15, this claim was not a part of the original or amended pleadings. In fact, this issue did not arise until Morenz had already filed suit against Progressive for invasion of privacy on another basis. After receiving notice of the lawsuit, Progressive subpoenaed the EAP for Morenz's records.
{¶ 32} However, assuming arguendo that the issue was tried by implied consent of the parties under Civ.R. 15, we cannot find that this disclosure invaded Morenz's privacy. There is unrefuted testimony that all Progressive employees, prior to participation in the EAP program, sign a Statement of Understanding outlining that his or her records may be disclosed if litigation is brought against Progressive. This is evidence of express consent by Morenz to such disclosure upon seeking treatment through Progressive's program.
{¶ 33} When Morenz filed the lawsuit alleging that Progressive caused him emotional distress, he could not expect those records to remain confidential, nor could he then use the disclosure of the records in question as a basis for his invasion of privacy claim.
{¶ 34} Progressive should have adhered to proper procedures for subpoenaing Morenz's records of his psychological treatment. We admonish this unwarranted means employed by Progressive to obtain these records. Despite our stern remonstrance of Progressive'sactions, Progressive would have been entitled to the information pursuant to R.C. 2317.02, and therefore any claimed error is harmless.
{¶ 35} We therefore overrule this assignment of error.
 II. {¶ 36} THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON PUNITIVE DAMAGES.
{¶ 37} Morenz alleges in his brief that the trial court erred in failing to submit jury instructions on punitive damages with regard to his claim for invasion of privacy. Having determined that the trial court did not err in granting the defendant's motion for a directed verdict on Morenz's invasion of privacy claim, we find the issue of damages to be moot.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., AND JAMES J. SWEENEY, J., CONCUR.
[1] Morenz withdrew his claims for Breach of Contract and Promissory Estoppel.