JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Bradley Sharkus ("appellant") appeals from the judgment of the trial court which directed a verdict in favor of defendant-appellee DaimlerChrysler Motors Corporation ("DCC") following the close of the plaintiff's evidence at a jury trial. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Appellant filed a complaint on April 3, 2000 against DCC which alleged the following causes of action: (1) breach of express and implied warranties of merchantability pursuant to the Magnuson-Moss Warranty Act as set forth in 15 U.S.C. § 2301, et seq. and (2) refund or replacement of the motor vehicle pursuant to Ohio's "Lemon Law," as set forth in R.C. 1345.71, et seq.
 {¶ 3} A jury trial commenced on January 8, 2001. The appellant presented his case-in-chief after which DCC moved for a directed verdict on all three causes of action. The trial court granted the directed verdict on the first two counts of the complaint, which alleged breach of express and implied warranties of merchantability pursuant to the Magnuson Moss Act. The third cause of action was submitted to the jury and on January 10, 2001, the jury ruled in favor of the defense. The appellant filed an appeal to this court challenging the trial court's directed verdict in Sharkus v. DaimlerChrysler Corporation, et al. (Oct. 25, 2001), Cuyahoga App. No. 79218. However, the appeal was dismissed for a lack of a final appealable order. The appeal is now properly before this court.
 {¶ 4} On March 11, 1999, the appellant signed a purchase agreement for a new 1999 Jeep Wrangler SE. The Jeep came with a three-year, 36,000 mile written warranty. A few months later in November of 1999, the appellant began experiencing problems with his Jeep. He testified that while he was driving on the highway, there was a failure of the gauges in his car, including the speedometer, tachometer and airbag light. The appellant drove the car for about a mile and eventually the gauges went back to normal. The appellant immediately went home and made a service appointment with the dealership. The appellant took the car in and the dealership fixed the problem, although the appellant stated he was not given any additional information about the malfunction.
 {¶ 5} About a month later, the appellant noticed a screeching or squealing noise in the Jeep, primarily when the car was cold, or first thing in the morning. He stated that the duration of the noise was unpredictable. On December 24, 1999, the appellant took the Jeep in for repair. He stated that when he drove the vehicle home, the squealing noise was gone. However, the appellant testified that it came back shortly afterwards, and he had the car serviced again on December 29, 1999. He called the dealership to inform them that the noise was still happening. He stated that when he was hearing a noise, he would sometimes feel a bit of a vibration down around the floor where the steering shaft might go through the fire wall. When picking up the car, the dealership representative told him that they had lubricated the steering shaft and that they were unable to hear the noise after that. The appellant did not hear the noise that day, but the noise returned.
 {¶ 6} On January 6, 2000, the appellant took the car to Brunswick Auto Mart, an authorized DCC agent, for repair of the steering because he could feel a vibration through the gas pedal and could still hear the squealing noise. He returned on January 14 for the same problem. On January 24, 2000, the appellant took the car to Brunswick again because he experienced a failure of the lights in his car, including his parking lights, headlights, brake lights and interior dashboard lights. Brunswick repaired the problem. The next day, he experienced the same light problem, took the Jeep to Brunswick again and they fixed the problem, noting on the invoice that there was a loose wire to the socket which had shorted out and burned out the bulb. At trial, the appellant testified that he was still experiencing some type of screeching noise.
 {¶ 7} The appellant also complained of minor problems with the Jeep which were repaired, including: a lug nut that repeatedly fell off, that a grommet was not reinstalled properly where the turn signal fits into the side of the steering column, and a bad idle air controller.
 {¶ 8} At the conclusion of the appellant's case, DCC moved for a directed verdict on each of his claims. The court granted DCC's motion with regard to the first two counts of the complaint. It is from this ruling that the appellant now appeals, asserting one assignment of error for our review.
 {¶ 9} "I. The trial court erred when it granted appellee's motion for directed verdict on the issues of breach of written warranty and breach of implied warranty of merchantability."
 {¶ 10} With regard to procedure, we note that a motion for a directed verdict is properly granted if, after construing the evidence in the light most favorable to the nonmoving party, reasonable minds could only find in favor of movant on a determinative issue. Civ.R. 50(A)(4).Gliner v. Saint-Gobain Norton Indus. Ceramics Corp. (2000),89 Ohio St.3d 414, 415, 2000-Ohio-210, reconsideration denied (2000),90 Ohio St.3d 1419. Koczan v. Graham (Sept. 27, 2000), Lorain App. No. 98CA007248. The court's ruling on a motion for directed verdict should be reviewed de novo. Id., citing Campbell v. Colley (1996),113 Ohio App.3d 14, 18, discretionary appeal not allowed (1996),77 Ohio St.3d 1494; Howell v. Dayton Power Light Co. (1995),102 Ohio App.3d 6, 13, appeal dismissed (1995), 73 Ohio St.3d 1425;Keeton v. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405, 409. A motion for directed verdict raises a legal question as to the sufficiency of the evidence to take the case to a jury and resolving the motion does not entail weighing the evidence or determining the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68-69.
 {¶ 11} With regard to the appellant's substantive claims, we note that in order to establish a breach of a written warranty under Magnuson Moss, the appellant must establish the existence of a written warranty and that the manufacturer failed to cure a defect in the Wrangler after being afforded a reasonable number of attempts. 15 U.S.C. § 2301, etseq. The Magnuson Moss Warranty Act creates a cause of action for a consumer damaged by the failure of warrantor to comply with its obligations under a written warranty or under the Act. 15 U.S.C. § 2310
(d). Magnuson Moss provides, in relevant part:
 {¶ 12} "* * * if the product (or component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be). * * *" 15 U.S.C. § 2304(a)(4).
 {¶ 13} The appellant claims that the trial court erred in directing a verdict in favor of DCC, because he had presented sufficient evidence of the diminution in value of the Jeep in order to allow a jury to determine the extent of his damages. We disagree. While the appellant focuses on damages in this case, we find it necessary to determine whether DCC ever breached a written warranty.
 {¶ 14} In its written order granting DCC's directed verdict motion, the trial court found:
 {¶ 15} "1. The Defendant sold the subject vehicle to the Plaintiff with a three (3) year thirty-six month warranty.
 {¶ 16} "2. Repairs were made to the vehicle pursuant to the warranty and at no cost to the owner.
 {¶ 17} "3. Defendant, through its authorized warranty agents, has showed a willingness to correct each problem Plaintiff complained of and never refused to service the vehicle during the warranty period.
 {¶ 18} "4. The vehicle has not been subject to an unreasonable number of repair attempts. * * *"
 {¶ 19} It is clear from these findings that the trial court found that DCC did not commit a breach of a written warranty. We agree with the trial court. The written warranty stated, "The Basic Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by DaimlerChrysler Motors Corporation — that is, defective in material, workmanship or factory preparation. * * *"
 {¶ 20} In this case, there is no evidence of a defect which the dealer failed to repair. While the appellant complained of a defective steering system as evidenced by the screeching noises that he heard, there was no evidence that would have demonstrated that the screeching noise was a result of a defect in the steering system. Accord, Miller v.DaimlerChrysler Motors Corp. (May 31, 2001), Cuyahoga App. No. 78300;Hill v. Toyota Motor Sales, U.S.A., Inc. (Feb. 10, 1995), Montgomery App. No. 14465; Further, the appellant testified that the dealer attempted on several occasions to duplicate the alleged noise, but was unsuccessful and therefore unable to determine that a defect existed. In the absence of evidence sufficient to establish a defect, the trial court did not err. We find that the appellant failed to set forth evidence from which reasonable minds could find that DCC actually breached a written warranty. Therefore, a directed verdict in favor of DCC on this claim was proper.
 {¶ 21} Finally, the appellant challenges the trial court's order directing a verdict in favor of DCC on his claim of breach of an implied warranty of merchantability pursuant to Magnuson Moss. The appellant had the burden of demonstrating that the Jeep was not fit for the ordinary purpose for which it was to be used. We cannot say that a sporadic noise and vibration in the steering column interfered with the functioning of the Jeep and therefore rendered it unfit for its ordinary purpose. Millerv. DaimlerChrysler Motors Corp. (May 31, 2001), Cuyahoga App. No. 78300;LaBonte v. Ford Motor Co. (Oct. 7, 1999), Cuyahoga App. No. 74855. Finding that no reasonable jury could have found for the appellant on this claim, we affirm the trial court's order directing a verdict in favor of DCC on the appellant's claim for breach of an implied warranty.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.